UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HAMILTON,

Petitioner,

CASE NO. 2:08-CV-13960

v.                                                    JUDGE DAVID M. LAWSON

MAGISTRATE JUDGE PAUL J. KOMIVES

SHERRY BURT,

Respondent.[1]

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        A.      *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        B.      *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        C.      *Failure to Comply with Stay Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        D.      *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        E.      *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        F.      *Jury Claims (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                1.      *Jury Coercion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                        a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                        b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                2.      *Jury Bias* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                        a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                        b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        G.      *Ineffective Assistance of Counsel (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                2.      *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                        a. Failure to Investigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                        b. Failure to Challenge Biased Jurors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
                        c. Failure to Challenge Habitual Offender Status . . . . . . . . . . . . . . . . . . . . . . . . . 24
                2.      *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        H.      *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 26
                1.      *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
                2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        I.      *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

_____

[1]By Order entered this date, Sherry Burt has been substituted in place of Steve Rivard as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Gregory Hamilton is a state prisoner, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan.

2.      On November 14, 2006, petitioner was convicted of carjacking, MICH. COMP. LAWS § 750.529a; first degree home invasion, MICH. COMP. LAWS § 750.110a(2); and interfering with a communication device, MICH. COMP. LAWS § 750.540(1)(5), following a jury trial in the Oakland County Circuit Court.  On December 5, 2006, he was sentenced to concurrent terms of 20-60 years' imprisonment each on the carjacking and home invasion convictions, and 1-15 years' imprisonment on the communication device conviction.  These sentences were to be served consecutive to a sentence for which petitioner was on parole at the time of the offenses.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> WHERE THE TRIAL COURT INITIALLY TOLD THE JURY THERE WOULD
> BE NO COURT THE NEXT DAY, BUT AT 4:30 P.M. IMMEDIATELY PRIOR
> TO THE COMMENCEMENT OF DELIBERATIONS–AFTER AT LEAST ONE
> JUROR HAD MADE PLANS FOR THE NEXT DAY–CHANGED THE COURT
> SCHEDULE IN ADD[ING] THE NEXT DAY IF NO VERDICT WAS REACHED
> BEFORE 5:00 P.M., THE 4:58 P.M. VERDICT WAS ESSENTIALLY A
> COERCED AND HASTY VERDICT IN CONTRAVENTION OF MR.
> HAMILTON'S CONSTITUTIONAL RIGHTS UNDER CONST. 1963, ART. 1, §
> 20 AND THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION.

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Hamilton*, No. 275479, 2008 WL 109099 (Mich. Ct. App. Jan. 10, 2008) (per curiam).

4.      Petitioner sought leave to appeal this issue to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Hamilton*, 480 Mich. 1191, 747 N.W.2d 306 (2008).

5.      On September 15, 2008, petitioner, proceeding *pro se*, filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising as grounds for relief the claim petitioner raised on direct appeal.  On March 9, 2009, petitioner filed a motion to hold the case in abeyance so that he could exhaust eight additional claims in the state courts.  The Court granted petitioner's motion on March 31, 2009.

6.      On June 22, 2009, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following two claims (rather than the eight identified in his motion to stay):

I.      MUST THIS COURT VACATE THE DEFENDANT'S CONVICTION WHERE HIS TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR FAILING TO MOVE TO STRIKE JURORS, FOR FAILING TO CONDUCT AN INVESTIGATION, AND FOR FAILING TO OBJECT TO HABITUAL OFFENDER.

II.     MUST THIS COURT VACATE THE DEFENDANT'S CONVICTIONS WHERE HIS APPELLATE COUNSEL SHOW [sic] PREJUDICE BY FAILING TO ADDRESS TRIAL COUNSEL'S INEFFECTIVENESS AND BY NOT ADDRESSING THE ISSUES PRESENTED IN ARGUMENT I, ON DIRECT APPEAL OF RIGHT.

On April 8, 2010, the trial court denied petitioner's motion for relief from judgment, concluding that the claims were barred because petitioner had failed to establish good cause for his failure to raise the claims on direct appeal, as required by MICH. CT. R. 6.508(D)(3).  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief

3

under MCR 6.508(D)."  *People v. Hamilton*, 490 Mich. 969, 806 N.W.2d 733 (2011); *People v. Hamilton*, No. 300075 (Mich. Ct. App. June 9, 2011).

7.    On January 27, 2012, petitioner filed a motion to reinstate this action, and on February 2, 2012, petitioner filed an amended application.  As grounds for the writ, petitioner raises the claim asserted on direct appeal, a substantive claim of juror bias, and the two claims petitioner raised in his motion for relief from judgment.

8.    Respondent filed her answer on August 2, 2012.  She contends that petitioner's jury coercion, jury bias, and ineffective assistance of trial counsel claims are procedurally defaulted, and that all of petitioner's claims are without merit.  Respondent also argues that the Court should dismiss the petition based on petitioner's failure to comply with the time limits set forth in the Court's order staying the case.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from an incident in which he broke into a home, demanded the victim's keys, and took her car.  The evidence adduced at trial was accurately summarized in petitioner's brief to the Michigan Court of Appeals on direct appeal:

> The case arose from events commencing shortly before 1:00 A.M. on August 16, 2006 at an apartment on Eight Mile Road in Farmington Hills.
> Arlene Alvey testified that she had been sleeping in her apartment at a senior complex and was awakened by a loud noise; she leapt up and saw a man standing by the foot of her bed.  It was a warm night and she had left her window open.  No lights were on in the bedroom, but she was able to see that the man was African American, of medium build, wearing dark clothing, probably a long-sleeve shirt, and wearing a white knit mask over his face.  Ms. Alvey was angry and demanded to know what he was doing there and what he wanted; the man calmly, but forcefully, answered that he would not hurt her and that he just wanted her car keys.  She thought "no way," and remained angry.  She asked him why, and he responded that he was being chased and he had to get out of there quickly.
> Ms. Alvey started to walk towards her purse to get the keys and the man told her that he did not want her money, just the keys; she then pulled back away from

4

her purse and the man told her she was stalling. She denied to the man that she was stalling, but she admitted that she was and did not want to give up her keys; she was still angry. The man grabbed her wrist, told her he had a gun and that there was a second person waiting outside. She then dumped a basket of extra keys on the bed and picked out a set of keys for the perpetrator.

The man said she had a telephone in her bedroom; she denied it, not wanting him to take the phone that was behind her lamp and not readily visible, and directed him into the living room where she gave him the handset from a portable telephone. She then told him to leave and she walked to the door; the man followed and either she or the man opened the door. He asked her which car was hers, and she vaguely waved to the parking lot and said the station wagon; she did not want to specify which car was hers, so she was being "difficult" with him. The man then activated her car alarm. She pushed him out of the apartment and locked the door, then secured her window and called 9-1-1 from her cell-phone. She looked out her kitchen window and saw that her car was missing from the parking lot. The perpetrator had been inside her apartment for about fifteen to twenty minutes, and she called the police at about 1:10 A.M.

She described her vehicle, a 2003 Saturn, to the operator, and provided some descriptive information about the perpetrator. The police arrived in about five to seven minutes, and she wrote out a statement. She was worried about her car, but, after her statement was completed an officer told her that the perpetrator had been caught. Ms. Alvey said that during the crime she thought there was something familiar about the perpetrator, and thought he seemed too familiar with the layout of her apartment. Later, after she thought about it, she had a sense of knowing the perpetrator. She said she told the detective that the perpetrator's voice sounded familiar, and she thought it might have been the son of the woman who lived in the neighboring apartment.

Ms. Alvey testified that she had spoke with Mr. Hamilton twice before when he was visiting his mother, who previously lived next door to Ms. Alvey. The first time was "much, much in advance" of the incident, perhaps one month before, when they had a conversation lasting about ten or fifteen minutes. He mentioned that he was a recording artist and planned to record a song for his mother's church. Ms. Alvey said that when her car was recovered there was a CD found inside that was not hers; she thought the CD had a song with "Jesus" in its title. Her telephone handset was also recovered in the car.

Ms. Alvey said Mr. Hamilton's mother had moved-out about one or two weeks before this incident. While the mother had lived next-door Mr. Hamilton visited her every week, and Ms. Alvey said [she] had heard him speaking with family members on the outside patio many times.

Livonia police officer Joseph Robertson testified that he was on patrol on August 16, 2006 in the area of Five Mile and Newburgh roads in Livonia and heard a dispatch at about 1:20 A.M. about the home invasion in Farmington Hills and the stolen vehicle. He was about four and one-half miles from the scene of the crime. He received information that the stolen car was a Saturn, received the plate number,

5

and a description that the suspect was a black male, wearing dark clothing and a white mask.  Officer Robertson said he saw a vehicle driving southbound on Newburgh about five or ten minutes after receiving the dispatch.  He followed the vehicle for about three and one-half miles while waiting for backup, and then effected a felony traffic stop.  Mr. Hamilton, who was driving the vehicle, was removed from the car, taken to the ground and handcuffed.  Officer Robertson said that Mr. Hamilton made several comments, including that he did not "steal that car from that lady [pause] or that guy," and said he had just purchased the car from a crack head for $20.00.  Farmington Hills police arrived and Mr. Hamilton was turned over to them.

Farmington Hills police officer Brian Kersanty testified that he got the radio dispatch about the home invasion and responded to Ms. Alvey's apartment; she gave him a description of the perpetrator as being a black male, with dark clothing, and a white mask.  He subsequently went to Joy and Newburgh where the traffic stop occurred; Mr. Hamilton was in custody.  Officer Kersanty saw Ms. Alvey's telephone handset on the passenger seat of the car.

Officer Kersanty said that later, during the booking process, he saw Mr. Hamilton attempting to conceal his T-shirt between a bench and the wall.  The officer asked Mr. Hamilton what he was doing and Mr. Hamilton told him the T-shirt was garbage and to throw it out; the officer put the shirt on the counter and, when looking at it later, noticed what he said were eye- and mouth-holes cutout of the shirt, matching Ms. Alvey's description of the mask.  Mr. Hamilton had been wearing a short-sleeve Polo shirt and the T-shirt, and had taken off both at the same time during the booking-process.  Ms. Alvey had identified that T-shirt.

Mr. Hamilton did not testify and no defense witnesses were presented.

Def.-Appellant's Br. on Appeal, in *People v. Hamilton*, No. 275479 (Mich. Ct. App.), at 1-6 (citations to trial transcript omitted); *see also*, Respondent's Answer, at 9-12.

C.    *Failure to Comply with Stay Order*

Respondent first contends that petitioner's claims should be dismissed for failure to comply with the Court's stay order.  Respondent argues that the Court's Order, entered on April 1, 2009, conditioned the stay on petitioner filing a motion for relief from judgment within 30 days.  Contrary to this directive, respondent argues, petitioner waited 83 days to file his motion on June 22, 2009.  Respondent is correct that a district court may dismiss a petition based on a petitioner's failure to comply with the stay order.  *See Grove v. Lafler*, No. 5:07-CV-11703, 2012 WL 201293, at *1 (E.D.

Mich. June 5, 2012) (O'Meara, J.). A court may also, however, exercise its discretion to overlook a petitioner's failure to comply, such as were the failure was not in bad faith and the state court motion was still filed within a reasonable time. *See Newson-Bey v. McGuiggin*, No. 2:03-CV-70958, 2011 WL 124460, at *3 (E.D. Mich. Jan. 14, 2011) (Tarnow, J.). Here, the Court did not explicitly set forth a period of time in which petitioner was to file his state court motion for relief from judgment. The Court merely ordered that the petition be "HELD IN ABEYANCE pending the exhaustion of petitioner's new claims in Michigan state court," and further required that petitioner "file an amended petition in this Court within twenty-eight (28) days after the conclusion of the state court proceedings." Order, dated 4/1/09, at 6. In granting the stay, the Court cited to *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002), which stated that "normally 30 days" in which to file in state court is appropriate. *See Palmer*, 276 F.3d at 781. The Court's order did not explicitly cite *Palmer* for this time limit, however, only for the more general proposition that the Court could impose reasonable time limits on petitioner's return to state court and then back to this Court. *See* Order, at 5-6. Thus, there was not an explicit time limit imposed by the Court, only one which could be derived by implication from the Court's citation to *Palmer*. And even if this is deemed to have set forth a time limit for petitioner, it does not appear that petitioner's failure to comply with the Court's order was done in bad faith, and as in *Newson-Bey* the state court motion was filed within two months of the deadline imposed by the Court. In light of the facts that the Court's time limit was not explicit and petitioner did not fail to comply in bad faith, the Court should decline respondent's request to dismiss the petition based on petitioner's failure to comply with the stay order.

D.    *Procedural Default*

Respondent contends that petitioner's first three claims–all but petitioner's ineffective

assistance of appellate counsel claim–are barred by petitioner's procedural default.  Specifically, respondent contends that petitioner's first claim is barred because petitioner did not object at trial; that petitioner's second claim is barred because petitioner never raised it in the state courts and is now barred from doing so; and that petitioner's third claim is barred because petitioner failed to raise the claim on direct appeal.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also, Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Although respondent is correct that petitioner's claims are defaulted on this basis, it is nevertheless necessary to consider the claims on the merits.  Petitioner contends that his appellate counsel was ineffective for failing to raise his defaulted claims on direct appeal.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

E.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

9

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

F.      *Jury Claims (Claims I & II)*

Petitioner's first two claims raise challenges to the jury. In Claim I, petitioner contends that the jury's verdict was a result of coercion by the trial court. In Claim II, he contends that several of the jurors in his case were biased. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Jury Coercion*

Petitioner first contends that the jury's verdict resulted from the coercive influence of the trial court. The Court should reject this claim.

a. *Clearly Established Law*

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfeld v. Phelps*, 484 U.S. 231, 241 (1988). When considering a claim that the trial court's actions or instructions coerced the jury's verdict, a reviewing court must apply a totality-of-

11

the circumstances test.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (citing *Lowenfeld*, 484 U.S. at 248-50); *Gibson v. United States*, 271 F.3d 247, 258 (6th Cir. 2001), *overruled in part on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002).  Under the AEDPA, the question is not whether this Court would find the trial court's actions coercive; rather, the question is whether the state courts were reasonable in finding no coercion.  *See Early*, 537 U.S. at 11.

*b. Analysis*

During jury selection, which occurred on a Tuesday, the trial court informed the jury that there would be no court on Wednesday and, if the case went beyond the day, the jurors would therefore be required to return on Thursday.  Juror Leach, a doctor, indicated that this was inconvenient for her because although she was off on Tuesday and Wednesday, she had a shift scheduled for Thursday that would be difficult to have covered.  The judge indicated that he did not think it would be a problem to have the doctor's shift covered, and that he would call the hospital and talk to the legal department if it became necessary.  *See* Trial Tr., at 54-55.  Juror Leach indicated that "[t]hat would be fine." *Id*. at 55.  At the conclusion of the case, after the judge had instructed the jury, he informed the jurors that they would continue with their deliberations on Wednesday, rather than Thursday.  The following exchange occurred:

> THE COURT: I know tomorrow is the day that you have off but we have a juror who can't be here on Thursday.  Otherwise, I have to make a call to the hospital director on her behalf.  Is there anyone who cannot come in tomorrow morning and deliberate on this case? If you can't, it's understandable.  But I would like – what?
>
> JUROR LEACH: I made other arrangements.
>
> THE COURT: Be here anyway.  All of you be here tomorrow morning at

> 8:30 – strike that, 9:00.  Be here tomorrow at 9:00 and start your discussion.  By the way, its only 4:30.  We're going to keep you for a half hour.  You can start deliberating.

Trial Tr., at 271-72.  The jury retired to deliberate at 4:30, and returned with a verdict at 4:58.  *See id*. at 273.

The Michigan Court of Appeals rejected petitioner's claim that the trial court's action in instructing the jury to return on Wednesday rather than Thursday was coercive.  After setting forth the correct legal standard, *see Hamilton*, 2008 WL 109099, at *1 ("Claims of coerced verdicts are reviewed on a case-by-case basis.  We must review the facts and circumstances of the case, as well as the specific language used by the trial court, to determine whether the defendant was denied a fair trial."), the court of appeals explained that "[t]he trial court did not inform the jury expressly or by implication that it must reach a verdict on Tuesday, or it would have no further opportunity to deliberate," nor did the court "threaten to require the jury, which had been working the entire day, to deliberate into the early hours of the morning."  *Id*.  "Rather," the court explained, "the trial court made a reasoned decision, based on the availability of the jurors, to require the jury to return the next day if necessary."  *Id*.

Here, "it is at least reasonable to conclude that there was not [jury coercion], which means that the state court's determination to that effect must stand."  *Early*, 537 U.S. at 11.  "[A] [trial] court's statement regarding the ability of the jury to deliberate on certain days is not necessarily coercive."  *United States v. Ratliff*, 63 Fed. Appx. 192, 195 (6th Cir. 2003).  As the court of appeals observed, nothing in the trial court's action suggested that the jury had to reach a verdict at all, or had to do so within a specified period of time.  The court merely informed the jury that it would return on Wednesday, rather than Thursday as originally planned.  This was based on the trial

13

court's well-founded belief that Juror Leach would have a problem returning on Thursday, but not on Wednesday. Although Juror Leach indicated that she had made other plans, when instructed to return on Wednesday anyway she did not indicate that she would be unable to do so. Further, the trial judge had previously indicated that he would call the hospital on her behalf if it became necessary. Although the jury returned a verdict shortly after it had begun deliberations, the case was not complex and there was overwhelming evidence of petitioner's guilt, and in any event "the jury's speed in reaching a verdict is irrelevant to whether an instruction was coercive." *Ratliff*, 63 Fed. Appx. at 196.

The Seventh Circuit's decision in *United States v. Crotteau*, 218 F.3d 826 (7th Cir. 2000), is instructive. In that case, after the jury had been deliberating for some time, it sent a note to the court asking for a definition of reasonable doubt. The court sent a note in response to the jury's question at 4:45 p.m. Included in the response was an instruction that the jury should "join us in court at 6:00 p.m. for adjournment until 9:00 a.m. tomorrow." *Id*. at 835. At 5:30 p.m., the jury indicated that it had reached a verdict. The Seventh Circuit rejected the defendant's claim that this note coerced the jury's verdict, explaining:

> We hold that the language that the district court used in its note regarding the times for adjournment for the day and re-adjournment for the next day did not, in any manner, coerce the jury into hastily reaching a guilty verdict. The note was neutral and favored neither the prosecution nor the defense; instead, the note merely responded to the jury's earlier question requesting a definition of reasonable doubt and advised the jury of the court's schedule.
>
> This court has previously stated our approval of a schedule in which a judge adjourns "the jury's deliberations at a reasonable hour and require[s] them to come back the next day." *United States v. Feekes*, 879 F.2d 1562, 1567 (7th Cir.1989). Although the jury came back with a guilty verdict forty-five minutes after receiving the note from the trial court, there is no evidence that it did so because it was coerced by the trial judge into reaching a guilty verdict. Thus, we are of the opinion that the court did not commit plain error in submitting the note to the jury.

14

*Id.* The circumstances here are the same: the trial judge's indication that the jury would return on Wednesday did not favor the prosecution or defense, nor did it suggest to the jury that it had to reach a verdict by a certain time. It merely advised the jury of the court's schedule.

Also instructive is this Court's decision in *Love v. Ludwick*, No. 09-10014, 2012 WL 993915 (E.D. Mich. Mar. 23, 2012) (Lawson, J.). In that case, during deliberations a juror informed the court that if he had to return the following day to continue deliberations he would have to forfeit a paid vacation. The trial court announced that if a verdict was not reached by the end of the day, deliberations would be suspended until the juror returned from his vacation. The juror returned a verdict later in that morning. *See id.* at *10. The Michigan Court of Appeals rejected the petitioner's claim that the trial court's scheduling announcement coerced the jury's verdict, *see id.*, and this Court found that determination to be reasonable on habeas review. The Court reasoned that "[t]here was no coercive deadlocked jury instruction," and "[t]here was no instruction setting time limits or deadlines for a verdict." *Id.* at *11. Further, even if the jurors believed they might have to come back, the Court reasoned, "the petitioner cannot show coercion, for it would be just as likely in such a circumstance that a jury would acquit a defendant or inform the trial court that they were wholly unable to reach any verdict as it would be for a jury to convict a defendant." *Id.*

*Crotteau* and *Love* are directly on point, and demonstrate the reasonableness of the court of appeals's determination in petitioner's case. Because it was "at least reasonable" for the Michigan Court of Appeals "to conclude that there was not [jury coercion], . . . the state court's determination to that effect must stand." *Early*, 537 U.S. at 11. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    2.    *Jury Bias*

15

Petitioner next contends that several of the jurors seated in his case were biased. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

The Sixth Amendment guarantees the right to a trial by an impartial jury. *See Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968). The constitutional standard of fairness requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. *See Morgan v. Illinois*, 504 U.S. 719, 726 (1992); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). A habeas court's review of a state court's determination of jury impartiality is highly deferential. *See Lucero v. Kirby*, 133 F.3d 1299, 1308 (10th Cir. 1998) (discussing *Mu'Min v. Virginia*, 500 U.S. 415, 422-28 (1991)); *Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996). Thus, "to establish a constitutional violation based on the trial court's refusal . . . to dismiss the venire panel, petitioner 'must demonstrate either that the trial resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved "such a probability that prejudice will result that it is deemed inherently lacking in due process."'" *Lucero*, 133 F.3d at 1308 (quoting *Brecheen v. Reynolds*, 41 F.3d 1343, 1350 (10th Cir. 1994) (quoting *Estes v. Texas*, 381 U.S. 532, 542-43 (1965))); *cf. Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000)).

### b. Analysis

Petitioner contends that several jurors were biased because they each indicated that they had been the victim of a robbery or carjacking, or knew someone who had been a victim. Specifically, petitioner points to: Juror Sgambati, who indicated that his car had been stolen in 1991, *see* Trial Tr., dated 11/14/06, at 22; Juror Hill, who indicated that her car had been broken into, *see id*. at 65; Juror Babich, who indicated that some property had been stolen from his best friend, *see id*. at 84;

16

Juror Davidson, who indicated that her husband's car had been broken into on their driveway and some property removed, *see id*. at 99; and Juror Byk, who indicated that she had property taken from her car eight years prior to the trial and some property taken from her yard six months before the trial, *id*. at 110.  Petitioner also points to the fact that Juror Babich indicated that her sister worked in the Child Welfare Division of the Tuscola County Prosecutor's Office, *see id*. at 84, and that Juror Davidson indicated that she knew a Macomb County prosecutor, *see id*. at 99.  Petitioner cannot show, based on these responses, that any of the seated jurors was biased against him.  The crimes suggested by the jurors, although all involving theft, were quite different from the crime charged against petitioner.  Petitioner was charged with breaking into the victim's home and taking her car keys by force.  On the contrary, each of the challenged jurors related theft incidents that did not involve home invasion or threats of force.  Further, each of the seated jurors stated his or her experiences would not influence the verdict, and that he or she could decide the case based solely on the evidence presented at trial.  *See id*. at 22, 65, 84, 99, 110.  The Court presumes that these statements were truthful, and petitioner has pointed to nothing to call into question the sincerity of the jurors' assurances.  *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (question in case of juror bias is whether juror swore "that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987) (habeas relief not warranted on petitioner's claim of juror bias where juror stated he could be impartial despite his relationship with the victim).  The fact that jurors were victims of only superficially similar crimes, standing alone, does not support a finding of bias.  *See United States v. Lopez*, 445 Fed. Appx. 190, 193 (11th Cir. 2011); *United States v. Mitchell*, 568 F.3d 1147, 1152-53 (9th Cir. 2009); *Gonzales v. Thomas*, 99 F.3d 978, 990-

91 (10th Cir. 1996). "Being the victim of a crime is not alone grounds to remove a juror." *United States v. Gibbs*, 125 F. Supp. 2d 700, 709 (E.D. Pa. 2000), *aff'd*, 77 Fed. Appx. 107 (3d Cir. 2003). Further, the fact that one juror's sister worked in the child welfare department of another prosecutor's office, and that one juror was friends with a prosecutor in another county, does not demonstrate bias. *See Baze v. Parker*, 371 F.3d 310, 326 (6th Cir. 2004); *McQueen v. Scroggy*, 99 F.3d 1302, 1319-20 (6th Cir. 1996); *United States v. West*, 458 F.3d 1, 8-9 (D.C. Cir. 2006); *United States v. Graves*, 418 F.3d 739, 743 (7th Cir.2005). "Courts will not presume bias simply because a juror works in law enforcement, is related to someone working in law enforcement or is acquainted with law enforcement personnel." *King v. Hedgpeth*, No. CIV S-08-1524, 2010 WL 2698609, at *21 (E.D. Cal. July 07, 2010) (citing *United States v. Le Pera*, 443 F.2d 810, 812 (9th Cir.1971). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Ineffective Assistance of Counsel (Claims III & IV)*

Petitioner next contends that he was denied the effective assistance of both trial and appellate counsel. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the

18

defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with

19

the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).[2]

2.    *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to investigate the case fully, failing to challenge the biased jurors, and failing to object to his habitual offender status at sentencing.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

*a.  Failure to Investigate*

Petitioner contends that counsel was ineffective for failing to investigate his claim that he purchased the car from a "crack head" for $200.00, and in particular for failing to investigate the fact that the car was not fingerprinted.  This claim is without merit.  In order to discharge his or her duty to investigate, counsel must "make reasonable investigations or [ ] make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  In deciding what investigations to undertake, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste" *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).  Further, "if the attorney had 'no reason to question the authenticity, accuracy, or relevance of' particular items of the prosecution's evidence, the attorney's choice not to investigate those aspects of that evidence is not unreasonable." *Eady v. Morgan*, 515 F.3d 587, 598 (citing *United States v.*

---

[2]Because these claims were not addressed on the merits by the Michigan courts, the "double deference" normally given ineffective assistance claims under § 2254(d)(1), *see Harrington*, 131 S. Ct. at 788, is not applicable here.  Thus, I consider only whether counsel was ineffective under the *Strickland* standard.

20

*Cronic*, 466 U.S. 648, 664 (1984)).  In short, "an attorney is under no duty to investigate frivolous, implausible, or meritless defenses."  *United States v. Carr*, 740 F.2d 339, 349 (5th Cir. 1984); *see also*, *Vargas v. Director, Dep't of Corrections*, 141 Fed. Appx. 556, 557 (9th Cir. 2005); *Hammonds v. Allen*, 849 F. Supp. 2d 1262, 1307 (M.D. Ala. 2012) (counsel is not required "to exhaust every lead, no matter how implausible or unlikely to bear fruit.").

Here, petitioner's defense was so implausible that counsel's decision to not further investigate the lead was reasonable.  Petitioner claimed that, between the time the car was stolen and the time he was discovered driving it, he purchased it from another person.  Apart from the inherent implausibility of the story and the failure of petitioner to identify the person from whom he supposedly purchased the vehicle, this claim was implausible based on the timing of events.  The victim testified that she phoned the police as soon as the intruder stole her car, *see* Trial Tr., at 152-53.  Officer Robertson located petitioner within if 5-10 minutes of receiving the call, several miles away from the scene.  *See id*. at 191.  It was implausible on its face that there was sufficient time for the alleged sale to have occurred.  Further, petitioner's claim was implausible in light of the fact that the thief who allegedly sold him the car just happened to steal the car from the former neighbor of petitioner's mother.  In light of the implausibility of petitioner's claim, petitioner cannot show that counsel was deficient in failing to investigate the claim further.  With respect to the fingerprint issue, counsel did question Officer Kersanty whether the phone receiver found in the car was tested for fingerprints, *see id*. at 221.  There is no reason to believe that other fingerprints would have been recovered, and there is no question that petitioner's fingerprints would have been found had the car been tested.

Further, even if counsel should have investigated further, petitioner cannot show that he was

prejudiced.  Petitioner does not point to any particular evidence that a further investigation would have uncovered.  He does not provide the name of the person who sold him the car or an affidavit from this person, nor does he suggest that there were any witnesses to the sale of the car.  As noted above, "it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim." *Pierce*, 63 F.3d at 833.  Thus, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Here, petitioner has pointed to nothing suggesting that counsel could have uncovered any evidence to support his claim, much less evidence sufficiently strong to raise a reasonable probability that the result of the proceeding would have been different.  Petitioner was identified by the victim, who knew petitioner from his visits to his mother, the victim's neighbor, was found driving the victim's car a very short time after the robbery, and had a white t-shirt with eye and mouth holes cut out of it, consistent with the victim's testimony concerning the mask worn by the perpetrator.  In light of this strong evidence of guilt and petitioner's failure to point to any specific evidence that further investigation could have uncovered, petitioner cannot show that counsel was deficient in failing to investigate further or that he was prejudiced by counsel's failure.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Failure to Challenge Biased Jurors

Petitioner next contends that counsel was ineffective for failing to challenge the biased jurors.  The Court should reject this claim.  First, it is doubtful that petitioner can establish that trial counsel's performance was deficient under the high standard applicable to ineffective assistance claims..  "[J]ury selection is a process that inherently falls within the expertise and experience of

22

trial counsel." *Palacio v. State*, 511 S.E.2d 62, 67 (S.C. 1999) (citing cases).  Because of this, counsel's decisions in the jury selection process are the type of strategic decisions which are particularly difficult to attack.  *See Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Cordova v. Johnson*, 993 F. Supp. 473, 530 (W.D. Tex.) (footnote omitted) (internal quotation omitted) ("Selecting a jury is more art than science. There is nothing unreasonable or professionally deficient in a defense counsel's informed decision to rely upon his own reading of venire members' verbal answers, body language, and overall demeanor[.]"), *aff'd*, 157 F.3d 380 (5th Cir. 1998).  Here, the record shows that counsel conducted a vigorous *voir dire*, and exercised numerous peremptory challenges.  *See* Trial Tr., dated 11/14/06, at 58, 70, 75, 83, 85, 88, 91, 94, 97, 98, 100, 103.  Further, although counsel did not challenge any jurors for cause, two jurors who indicated partiality in favor of the prosecution were removed for cause, one at the behest of the prosecutor and one by the trial judge.  *See id.* at 64, 106.  Petitioner has failed to offer anything to show that counsel's decision to retain the seated jurors was anything other than a reasonable strategic decision.

More importantly, even if petitioner could show that counsel's performance was deficient, he cannot show that he was prejudiced by counsel's failure to seek removal of these jurors.  In order to establish prejudice attributable to a counsel's failure to remove a juror, a defendant must show that the juror was actually biased. *See Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001); *Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *Irons v. Lockhart*, 741 F.2d 207, 208 (8th Cir. 1984); *Parker v. Turpin*, 60 F. Supp. 2d 1332, 1362 (N.D. Ga. 1999); *Odle v. Calderon*, 919 F. Supp. 1367, 1389 (N.D. Cal. 1996).  Here, as discussed above, petitioner has failed to show that any of the seated jurors was actually biased.  Thus, petitioner is not entitled to habeas relief on this claim.

### c.  *Failure to Challenge Habitual Offender Status*

Petitioner next contends that counsel was ineffective for failing to challenge his habitual offender status at sentencing.  Petitioner contends that counsel should have objected because the notice of sentence enhancement was not timely filed.  This claim is without merit.  Petitioner was sentenced as an habitual offender under MICH. COMP. LAWS § 769.12.  The Michigan habitual offender statutes provide, in relevant part:

> In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

MICH. COMP. LAWS § 769.13(1).  Petitioner contends that he was arraigned on August 16, 2006, while the habitual offender notice was not filed until October 18, 2006.  However, the August 16 arraignment to which petitioner refers was the arraignment on the criminal complaint or warrant, which occurs in the district court.  *See* MICH. CT. R. 6.104.  The Michigan Court Rules provide for a further arraignment on the information in the circuit court.  *See* MICH. CT. R. 6.113.  And, indeed, it is the district court's return following a preliminary examination which authorizes the filing of an information in the first instance.  *See People v. McGee*, 258 Mich. App. 683, 695, 672 N.W.2d 191, 199 (2003); MICH. COMP. LAWS § 767.42(1).  A finding of probable cause at the preliminary examination is a prerequisite to the filing of an information.  *See People v. Baugh*, 243 Mich. App. 1, 5, 620 N.W.2d 653, 656 (2000).  Section 769.13 requires that the notice of enhancement be filed "within 21 days after the defendant's arraignment *on the information* charging the underlying offense."  MICH. COMP. LAWS § 769.13(1) (emphasis added).  As explained above, petitioner could not have been arraigned on the information until after he was bound over following the preliminary examination, because before that time there was no information permitted by law.  And the state

24

court docket sheet filed by respondent reflects that petitioner was bound over from the district court on October 9, 2006, and the information was filed on that date.  The docket sheet further reflects that petitioner was arraigned on the information on October 17, 2006.  The habitual offender notice was filed the following day.  Therefore, there was no violation of § 769.13(1), and counsel was not ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006) (counsel not ineffective for failing to raise meritless objection); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (same); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993) (same).

### 2. *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his second through fourth habeas claims on direct appeal.  In evaluating the performance of appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent."  *Id*.  As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'"  *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.  *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

25

Here, counsel raised a significant issue on direct appeal, and petitioner has not shown that the claims he presented in his motion for relief from judgment are clearly stronger that the claims raised by counsel on direct appeal.  Further, as explained above, petitioner has failed to show that any of his claims have merit, and thus he cannot establish a reasonable probability that his claims would have succeeded on direct appeal.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his appellate counsel claim.

H.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

26

deserve encouragement to proceed further.'"'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.     *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  With respect to petitioner's jury coercion claim, there is no question that the court's instruction did not compel the jury to reach any particular verdict or any verdict at all, and merely set forth the court's

27

schedule. Thus, the resolution of this claim is not reasonably debatable. Because there is no indication that any of the jurors seated in petitioner's case were actually biased against him, the resolution of petitioner's jury bias and related ineffective assistance claims is not reasonably debatable. Because petitioner's claim to have bought the stolen car was implausible both on its face and in light of the other evidence, and because petitioner has failed to point to any evidence further investigation would have revealed, the resolution of petitioner's ineffective assistance claim based on counsel's failure to investigate is not reasonably debatable. And because the habitual offender notice was filed in accordance with Michigan law, the resolution of petitioner's ineffective assistance claim based on counsel's failure to challenge the habitual offender sentencing is not reasonably debatable. Finally, because the resolutions of petitioner's underlying claims are not reasonably debatable, it follows that the resolution of petitioner's ineffective assistance of appellate counsel claim is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

I.  *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.  <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

28

R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 11/21/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on November 21, 2012.

s/Eddrey Butts
Case Manager

29